## Carskaddon *v.* Miller, Appellant.

*Parents and child—Promissory note—Gift—Evidence—Decedent's estates.*

Where in an action on a promissory note given by a father to his daughter in the former's lifetime, it appears from various papers passing between the father and daughter and the latter's husband that the note was not given as a gift, but was only to be held by the daughter so long as the father granted her permission to hold the same, evidence is admissible to show that the father twice before his death demanded the return of the note from his daughter, but was met with the reply that the note was lost, and would be returned when found.

Argued March 8, 1904.    Appeal, No. 8, Feb. T., 1904, by defendant, from judgment of C. P. Clinton Co., May T., 1899, No. 208, on verdict for plaintiff in case of Beckey Carskaddon v. Phœbe Miller, Deceased.    Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ. Reversed.

Assumpsit on promissory note.    Before Mayer, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,182.72.    Defendant appealed.

*Errors assigned* were (1) in overruling offer in evidence quoted in full in the opinion of the Superior Court; (2) in giving binding instructions for plaintiffs.

*C. G. Furst*, with him *S. D. Furst*, for appellant.

*C. S. McCormick*, with him *H. T. Hall*, for appellee.

Opinion by Beaver, J., April 18, 1904:

The serious defects in the appellant's paper-book, upon which the motion to quash was based, were all remedied after a fashion when the case was called for argument and, inasmuch as the certificate of the judge in the usual form was found in an obscure place in the record, although not printed in the paper-book, the motion to quash was overruled and the case is considered upon its merits.

W. S. Carskaddon, the husband of the plaintiff, being in-

debted to her father, James S. Miller, executed a bill of sale
dated November 25, 1893, for certain personal property in-
cluded in a schedule thereto attached. Upon the same day
the father leased the same property to his daughter by a written
lease, to which a similar schedule was attached, and there would
seem from the evidence to have been executed contemporane-
ously therewith, without any apparent consideration, a judg-
ment note payable to her for $850.50, being $7.00 less than the
amount of the schedule of personal property leased. Subse-
quently, on October 28, 1895, Miller signed and delivered to
his daughter a paper which can only be intelligently under-
stood by copying in full as follows :

" Know all men by these presents that I, James S. Miller, of
Leidy township, Clinton county, state of Pa., in consideration
of two dollars paid me by Sarah R. Carskaddon, my daughter,
of Ritchie station, Clinton county, state of Pa., have bargained,
sold and released her from all rent unpaid in the schedule of
goods and chattels I herewith hand to her. Having leased the
same to her for the term of five years on the 25th day of Nov.
A. D. 1893, I also command the said Sarah R. Carskaddon to
take and hold the note that was given in her favor at the time
I leased her the goods named in the schedule above mentioned,
which I now hand her, together with the note which I have
had in my possession from the 25th day of Nov. 1893 to this
date. The same Sarah R. Carskaddon to own and possess the
goods and chattels as her property. To keep and hold the note
in her possession until such time as I grant her to hold the
same in her possession. At such time as I make a will or be-
queathal of my property the said Sarah R. Carskaddon is to
deliver the said note to me ; and, in case I should die without
making a will, she is to retain and hold said note and have the
same entered up against my estate for the sum mentioned in
note given on the 25th day of Nov. 1893 for the sum of $850.50.
In witness whereof I have hereunto set my hand and seal this
28th day of October 1895.

" Signed, sealed and de-              his
    livered in presence of    JAMES ✕ S. MILLER.   [Seal]
        " W. S. CARSKADDON.          mark
      · " JOSEPH BEIDLER."

An action of assumpsit was brought upon this note after the death of Miller and, upon the trial, the paper above recited was offered in evidence by the plaintiff.   The defendant, in order to explain the transaction, offered the bill of sale from Carskaddon to his father-in-law and also the lease for the same goods by him to his daughter.   These papers being all in evidence, the defendant, Jacob Miller, a son of the decedent, being on the stand, made the following offer: "Defendant's counsel offer to prove that he (the witness) and his father went from where his father and he resided to Johnson's run, about eighteen miles distant, to the house of W. S. Carskaddon and Rebecca Carskaddon, this plaintiff, and that his father, after he had got there, demanded the note on which this suit is founded—note dated November 25, 1893, for $850.50 of his daughter Rebecca Carskaddon, the plaintiff in this suit and that after he demanded it she went up stairs, confessedly to get him the note and, when she returned, she said the note was lost; she couldn't find it.

"That in the fall of 1896 James S. Miller, the intestate, again demanded the note of the plaintiff, when she again asserted that the note was lost and it being lost was the only reason for not delivering the note to him, the said James S. Miller; and this to be followed by proof that her father, the said James S. Miller, died leaving an estate not exceeding $1,100 and a widow, an aged person, and nine children, of which the said plaintiff is one.

"That in June, 1897, in a conversation with her father, the plaintiff said to him that she had not found the note declared on but as soon as she would find it she would give it to him for she had no claim to it, and that James S. Miller died in September, 1897."

The paper, under and in pursuance of which the note upon which the suit is founded, was delivered to the plaintiffs, is somewhat difficult to construe, but it is clearly evident, taking it as a whole, that the note was not a gift from the father to his daughter.   By the terms of the paper, he gave her the goods and chattels which he had received from her husband in payment of a note which the latter owed him.   The decedent was an illiterate man, apparently unable to write his name. The son-in-law was present when the paper was signed, being

one of the subscribing witnesses. These facts are somewhat significant, although by no means controlling. By the terms of the agreement, the plaintiff was "to keep and hold the note in her possession, until such time as I grant her to hold the same in her possession." The meaning of this is not clear. Taken as it is written, it would imply that a further grant to hold the note might be made later, but the evident meaning was that it was to be held in her possession only so long as her father granted her permission to hold the same. The defendant offered to prove that such permission was revoked by the demand upon the daughter for the note, which demand was twice met by the assertion that it was lost and by the further assertion, as set forth in the offer on the part of the plaintiff, that she had no claim to it.

Taking the offer as verity, as we are bound to do, it was evidence, to show the interpretation which the parties placed upon it and was an admission on the part of the plaintiff that she held it subject to her father's control and that it was his and not hers. Surely this was competent and relevant testimony and, as was said by the court below, upon granting a new trial, " If this testimony is to be believed, then James S. Miller would have obtained possession of the note and the plaintiff could not, after stating this note was lost and thereby preventing Miller from obtaining possession of it, now claim to hold this note under this agreement." In this conclusion the court below was clearly right and the defendant's offer should, therefore, have been admitted. It follows that if the proof had risen to the level of the offer, the case should have gone to the jury. Besides that it was competent to show the express and affirmative revocation of the permission to hold the note.

Judgment reversed and a new venire awarded.